**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

| | |
|---|---|
| JAMAL E. COLLINS, | |
| Plaintiff, | CIVIL ACTION NO.: 5:18-cv-73 |
| v. | |
| THOMAS FERRELL, | |
| Defendant. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on December 21, 2020.  Doc. 86.  Plaintiff filed a Response.  Doc. 95.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DIRECT** the Clerk of Court to enter the appropriate judgment and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis status* on appeal.[1]

### PROCEDURAL HISTORY

Plaintiff, currently incarcerated at Ware State Prison ("WSP") in Waycross, Georgia, filed a 42 U.S.C. § 1983 Complaint to contest allegedly deficient medical treatment he received at that facility.  After conducting frivolity review, the Court found Plaintiff set forth non-frivolous deliberate indifference claims against Defendants Ferrell and Martyn.  Doc. 24. Defendant Martyn moved for dismissal based on Plaintiff's failure to exhaust his administrative

---

[1]      Additionally, Plaintiff filed a Motion Requesting Status of Case.  Doc. 109.  Plaintiff requested an update on whether the Court had ruled on Defendant's Motion for Summary Judgment.  As this Report addresses the pending Motion for Summary Judgment, I **DENY as moot** Plaintiff's Motion Requesting Status of Case.

remedies as to his claim against her, which the Court granted.[2]  Doc. 50.  Thus, all that remains

is Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim against

Defendant Ferrell.  Defendant Ferrell now moves for summary judgment as to Plaintiff's claim.

Doc. 86.

<h3 style="text-align:center">UNDISPUTED MATERIAL FACTS</h3>

Local Rule 56.1 of the Southern District of Georgia provides a party moving for

summary judgment must include "a separate, short, and concise statement of the material facts as

to which it is contended there exists no genuine dispute to be tried as well as any conclusions of

law thereof."  Local R. 56.1.  Defendant Ferrell submitted a Statement of Material Fact ("SMF")

in support of his Motion for Summary Judgment, in accordance with the Federal Rules of Civil

Procedure and Local Rule 56.1.  Doc. 86-2.  Defendant's SMF relies on Defendant Ferrell's

declaration, Plaintiff's medical records, the Declaration of Crystal Hendley, Plaintiff's Georgia

Department of Corrections' ("GDC") movement history, and Plaintiff's deposition transcript.

Docs. 86-3 to 86-5.  Prior to summary judgment, Plaintiff corrected his deposition, using errata

sheets.  Defendant challenged Plaintiff's use of errata sheets, urging the Court to disregard the

corrections.  Doc. 86-1 at 18–23.  The Court discussed below Plaintiff's use of errata sheets and

Defendant's challenge to it.

Plaintiff also filed a Response in Opposition to the Motion for Summary Judgment,

including an Opposition to Defendant's Statement of Material Facts and an Amended Statement

of Material Fact.  Docs. 95-1, 95-3.  Defendant filed a Reply, primarily addressing Plaintiff's

Opposition to Defendant's Statement of Material Facts.  Doc. 97-1.  Plaintiff's Opposition to

---

[2]      Plaintiff devotes considerable briefing to claims against former Defendant Martyn, as well as claims against Dr. Sharon Lewis, who has never been a Defendant in this case.  Doc. 95-2 at 7–16, 29–35, 69–73, 95–102, 128–32, 139–43.  Because the Court dismissed the claims against Defendant Martyn and Dr. Lewis is not a Defendant, the Court does not consider these portions of Plaintiff's briefing.

Defendant's Statement of Material Facts and Amended Statement of Material Facts, which spans 85 pages, also warrants a separate discussion because much of Plaintiff's submission is improper.

## I.      Plaintiff's Use of Errata Sheet

Plaintiff attached eight pages of errata sheets, which made changes to his deposition testimony.  Doc. 86-5 at 344–51.  Defendant argues Plaintiff's errata sheets should be disregarded and urges the Court to consider his deposition testimony as initially given.  Doc. 86-1 at 18–23.

Many of Plaintiff's corrections are not material to the issue of summary judgment.  For example, Plaintiff corrects his deposition testimony regarding his historical drug use, an issue not material to the determination of summary judgment.  See Doc. 86-5 at 344 (correcting pages 43 and 44 of his deposition transcript).  Plaintiff made other similar corrections, bearing on issues not relevant to whether Defendant is entitled to summary judgment, like previous knee injuries, where Defendant placed Plaintiff's cane in the examination room, and confirming the date of certain events.  Id. at 345 (correcting page 60, line 20); id. (correcting page 123, line 14); id. (correcting page 128, line 13); id. at 346 (correcting page 144, line 4); id. (correcting page 166, line 16; and id. at 348 (correcting page 144, line 25).  Thus, it is not necessary to determine the validity of many of the changes Plaintiff made to his errata sheets.

However, Plaintiff also utilizes the errata sheets to contradict his previous testimony on matters central to Defendant's pending Summary Judgment Motion.  Defendant argues portions of the errata sheets contradicting any material portions of Plaintiff's previous testimony should be disregarded for purposes of summary judgment.  Doc. 86-1 at 18–23.

3

Federal Rule of Civil Procedure 30(e)(1) allows deponents to review the deposition and make changes "in form or substance" within 30 days of receiving the deposition transcript. Fed. R. Civ. P. 30(e)(1). Courts have taken different approaches to errata changes—one strict, one lenient, and another flexible. Candy Craft Creations, LLC v. Gartner, No. CV 212-091, 2015 WL 1541507, at *10–11 (S.D. Ga. Mar. 31, 2015). The strict approach does not permit a deponent to "make substantive changes to their deposition testimony through the use of an errata sheet," while the lenient courts allow deponents to make changes freely. Id. at *10 (citing ChemFree Corp. v. J. Walter, Inc., No. 1:04-CV-3711, 2008 WL 5234247, at *1 (N.D. Ga. Sept. 30, 2008)). Other courts have taken a flexible approach, which allows a plaintiff "to make substantive errata changes that contradict [his] prior deposition testimony" but permits a court to disregard such changes in deciding a motion for summary judgment. Candy Craft, 2015 WL 1541507, at *10–11 (citing Purdee v. Pilot Travel Cntrs., LLC, No. CV 407-028, 2007 WL 3142716, at *2, n.2 (S.D. Ga. Oct. 23, 2007)); see also In re Trasylol Products Liab. Litig., No. 08-MD-01928, 2010 WL 5151579, at *8 (S.D. Fla. Nov. 16, 2010) (applying the flexible approaching and disregarding errata sheets "where the corrected testimony contradicts the original testimony, and Plaintiff[] fail[s] to provide a sufficient justification for the change"); ChemFree Corp., 2008 WL 5234247, at *4 ("Absent some 'obvious confusion,' [deponent] cannot now decide that the questions were confusing in an effort to change his deposition testimony to avoid an unfavorable summary judgment."); Estate of Bryant v. Progressive Am. Ins. Co., No. 8:17-cv-2354, 2018 WL 11344802, at *9 (M.D. Fla. Nov. 7, 2018) (explaining the Eleventh Circuit has signaled substantive changes are permissible under Rule 30(e) if the changes are clarifications and not wholly contradictory to prior testimony). The Eleventh Circuit Court of Appeals has not held which standard applies in this Circuit but has affirmed a district

4

court which applied the more stringent test. See Reynolds v. IBM Corp., 125 F. App'x 982 (11th Cir. 2004). But the Eleventh Circuit has also stated a district court does not err if it disregards a deponent's errata sheet that contains "not merely corrective changes but instead substantive changes that contradicted his deposition testimony," indicating approval for the flexible approach. Jacobs v. Chadbourne, 733 F. App'x 483, 486 (11th Cir. 2018). The undersigned finds the flexible approach to be correct one, as it comports with the language of Rule 30, while mitigating the risk a litigant might use an errata sheet to improperly manufacture a factual dispute to avoid summary judgment. Therefore, Plaintiff's errata changes are considered under the flexible approach.

Here, Plaintiff lists the reason for most alterations as "didn't understand the question," without elaboration and relies on this scant explanation to wholly contradict previous testimony on issues relevant to summary judgment. Doc. 86-5 at 344–51. For example, Plaintiff changed his deposition testimony via errata sheet to state Defendant refused to prescribe him any medicine. Id. at 346 (correcting page 197, line 13, and changing his previous testimony to state Defendant prescribed him no medicine, rather than just refusing to provide Plaintiff with Tylenol #3).[3] Plaintiff states this correction is necessary because he was confused by the question. However, the undersigned discerns no obvious confusion by Plaintiff during the deposition and does not find the form of the question confusing. Defendant's counsel's question was straightforward, and Plaintiff's response demonstrates he understood the question. Id. at 199–

---

[3]       Plaintiff's original testimony he was provided medication to treat his knee injury other than Tylenol #3 is consistent with other evidence in the record, while his errata sheet submission he was not provided any medication is plainly contradicted by the record. See Doc. 86-2 at 11; Doc. 86-3 at 10, 88, 127–36 (showing prescriptions for naproxen and Neurontin). The fact Plaintiff's initial testimony conforms with the record and his errata sheet is contradicted by the record bolsters the conclusion the errata sheets should not be considered in determining summary judgment.

200.  Nevertheless, Plaintiff uses an errata sheet to change his testimony that Defendant provided some medication, just not Tylenol #3, to no medication whatsoever was provided.

Likewise, Plaintiff contradicts his deposition testimony relating to whether Defendant Dr. Ferrell provided treatment during his visits.  Id. at 347 (correcting page 196, line 14).  Plaintiff was asked, "Is it fair to say that every time you went to see Dr. Ferrell about your knee pain, he assessed your knee and took some action to assist with the knee?"  Id. at 198.  Initially, Plaintiff responded, "Except for one time, and that was on 08/17 when he took my cane."  Id.  Plaintiff seeks to change his testimony to state, "No, not every time I went to see Dr. Ferrell, no actions taken every time," because he did not understand the question.  Id. at 347.  However, there was no obvious confusion during the exchange, Plaintiff never asked for clarification from counsel during the deposition, and the Court does not find the question confusing.  Plaintiff's response demonstrates he understood the question and he does not offer any further elaboration as to what was confusing about the question or why he seeks to directly contradict his previous testimony using errata sheets.  See also e.g., id. at 346 (changing his testimony about whether Defendant prescribed him medication other than Tylenol #3 because he "didn't understand the question" without further elaboration); id. at 347 (contradicting his testimony on whether Defendant referred him to an orthopedist because he "didn't understand the question" without further elaboration).  Instead, Plaintiff directly contradicts his previous testimony, with almost no elaboration as to the need for the correction.  Indeed, Plaintiff changed his testimony from "Yes" to "No" via errata sheet because he "didn't understand the question" even when Defendant's counsel clarified during the deposition Plaintiff understood what was being asked.  Id. at 349 (changing his testimony at page 16, line 6 to "Yes" when asked if he had taken any medications

which would impair his ability to testify truthfully because he "didn't understand the question" even though counsel confirmed Plaintiff understood the question).

Though Plaintiff made the changes to his deposition testimony close in time to his deposition, rather than in response to summary judgment, the errata sheets should still not be considered.  Given Plaintiff's conclusory explanation for the alterations in the errata sheet, no apparent confusion during the deposition, directly contradictory testimony (as opposed to clarifications), and the substantive nature of the changes bearing on material issues in the case, the errata sheets will not be permitted to create a material issue of fact in the summary judgment analysis.  See Candy Craft, 2015 WL 1541507, at *11; In re Trasylol, 2010 WL 5151579, at *8 (disregarding errata sheets where deponents stated the correction was necessary because they were confused, but there was nothing noticeably confusing in their original testimony); Maronda Homes, Inc. of Fla. v. Progressive Express Ins. Co., No. 6:14-cv-1287, 2015 WL 4167377, at *4 (M.D. Fla. July 9, 2015) (striking errata sheets where deponents changed answers in a contradictory fashion, from "Yes" to "No" and the reason given for the changes was non-specific complaints about the questions).  Accordingly, the undersigned will not consider changes Plaintiff made to his deposition testimony in deciding Defendant's Motion for Summary Judgment.  Jacobs, 733 F. App'x at 486 (explaining a district court does not err when it disregards substantive, contradictory changes to a deponent's testimony).

## II.    Plaintiff's Opposition to Defendant's Statement of Material Facts

Plaintiff's Response to Defendant's SMF is voluminous, and Plaintiff disputes every single statement of material fact in Defendant's SMF.  Docs. 95-1, 95-3.  However, Defendant points out much of Plaintiff's Response fails to actually refute Defendant's SMF.  Doc. 106 at 1.

Plaintiff's Response is riddled with the same, unhelpful form objection,[4] is unresponsive to the factual assertions Defendant makes, improperly offers argument, admits the fact within his objection, and often misstates the record or evidence which purportedly supports his factual assertions.

For example, Defendant states, "Defendant Dr. Thomas Ferrell is a retired medical doctor."  Doc. 86-2 at 1.  In Plaintiff's Opposition, he "genuinely disputes" this fact, asserting Defendant Ferrell was fired for misconduct relating to his treatment of Plaintiff.  Doc. 95-1 at 2–3.  While the assertion is replete with citations, none of them support Plaintiff's contention Defendant Ferrell was fired, as opposed to retired.  Likewise, Defendant asserts, "[Plaintiff] returned to WSP on June 8, 2017."  Doc. 86-2 at 3.  Again, Plaintiff "genuinely disputes" this assertion and provides unrelated argument about whether a non-defendant in this case prescribed him crutches.  Doc. 95-1 at 13–14.

Plaintiff's deficient responses to clear and unobjectionable factual statements are problematic, and in so responding, Plaintiff has done little to advance his case.  Thus, for purposes of this Motion—and especially the factual background herein recited—the Court accepts as true the facts contained in Defendant's SMF so long as they are supported by the evidence, do not make credibility determinations, and do not involve legal conclusions.[5]  <u>Collins v. Okefenoke Rural Elec. Membership Corp.</u>, No. CV 213-052, 2014 WL 7440887, at *1 (S.D. Ga. Dec. 29, 2014); <u>EEOC v. Atlanta Gastroenterology Assocs., LLC</u>, No. Civ.A 1:05CV2504,

---

[4]     In the vast majority of his responses, Plaintiff states he "genuinely dispute Defendant Ferrell's material fact" because "the material that he cites from . . . do not establish the absence of a genuine dispute, <u>see</u> <u>Fed Rule 56(c)(1)(B)</u>."  <u>See e.g.</u>, Doc. 95-1 at 75.

[5]     In fact, the Court has reviewed the entirety of Plaintiff's Opposition to Defendant's Statement of Material Facts and has failed to identify as single, material fact which is actually in dispute and is also supported by his citations to the record.

2007 WL 602212, at *3 n.2 (N.D. Ga. Feb. 16, 2007); see also Williams v. Slack, 438 F. App'x

848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted

where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to

state valid objections).  Put differently, "it is not the Court's duty to comb the record to find

reasons to deny summary judgment."  Williams, 438 F. App'x at 849–50.  Because Plaintiff did

not "effectively controvert" Defendant's facts, they are deemed admitted.  Rigby v. Philip Morris

USA, Inc., No. 5:13-CV-110, 2016 WL 7508088, at *1 (S.D. Ga. Sept. 23, 2016) (citing Royal v.

N.Y. Life Ins. Co., No. 6:10-CV-104, 2015 WL 339781, at *5 (S.D. Ga. Jan. 26, 2015)).  With

these principles in mind, the Court has identified the following undisputed material facts.

## III.  Undisputed Material Facts

Plaintiff was, and is, a state prisoner in GDC custody.  Doc. 86-2 at 1; Doc. 86-5 at 48–

56.  Plaintiff was primarily housed at WSP when the relevant events allegedly occurred.

Docs. 86-2, 86-4; Doc. 86-5 at 48–56.  At that time, Defendant Ferrell served as WSP's medical

director.  Doc. 86-2 at 2; Doc. 86-3 at 2.  As the medical director, Defendant had all inmates at

WSP, including Plaintiff, under his care.  Doc. 86-2 at 2; Doc. 86-3 at 2.  Further, Defendant was

permitted to exercise discretion in determining what care a patient would receive, including

whether to implement any recommendations from other medical providers.  Doc. 86-2 at 2;

Doc. 86-3 at 2–3.

### A.    Plaintiff's June 6, 2017 Knee Surgery

One June 6, 2017, Dr. Mark Winchell performed knee surgery on Plaintiff at Georgia

State Prison.  Doc. 86-2 at 3; Doc. 86-3 at 5, 15–21.  Plaintiff returned to WSP on June 8, 2017.

Doc. 86-2 at 3; Doc. 86-3 at 5, 22; Doc. 86-4 at 6.  Because Dr. Winchell did not include post-

operative pain management recommendations, Defendant exercised his medical judgment to

devise a treatment plan for Plaintiff's post-operative knee pain.[6]  Doc. 86-2 at 3; Doc. 86-3 at 5, 17.

### B.    Plaintiff's Post-Operative Pain Management Care

Defendant Ferrell initially treated Plaintiff's knee pain with Tylenol #3, which is a blend of acetaminophen and codeine, and naproxen, which is a non-steroidal anti-inflammatory drug. Doc. 86-2 at 3; Doc. 86-3 at 5, 26, 103; Doc. 86-5 at 80–81.  Defendant Ferrell continued to evaluate Plaintiff's knee periodically, as did Dr. Winchell and two nurse practitioners at WSP. Doc. 86-2 at 4; Doc. 86-3 at 5, 26–27, 31–33, 39, 43, 47–48, 53–54, 56–58, 63–64, 66, 70–71, 76–77, 88, 96–98, 101–02.  Defendant referred Plaintiff to physical therapy, which he attended from July 5, 2017 until January 22, 2018, when he refused to participate unless he received Tylenol #2.  Doc. 86-2 at 4; Doc. 86-3 at 6, 28, 62; Doc. 86-5 at 89, 166, 170.  Additionally, Defendant referred Plaintiff to the pain management clinic at Augusta State Medical Prison, where Dr. Dan Martin evaluated Plaintiff on July 10, 2017.  Doc. 86-2 at 5; Doc. 86-3 at 6, 36, 39; Doc. 86-5 at 103–04.

On June 21, 2017, Defendant reduced Plaintiff's Tylenol #3 dosage from three tablets a day to one tablet a day.  Doc. 86-2 at 5; Doc. 86-3 at 6, 26; Doc. 86-5 at 81.  However, Defendant prescribed Plaintiff 300mg Neurontin to help manage his pain.  Doc. 86-2 at 5; Doc. 86-3 at 26; Doc. 86-5 at 128.  About a month later, Plaintiff's Neurontin dose was increased to 600mg three times a day and he was also prescribed Voltaren gel and a TENS unit.  Doc. 86-2 at 6; Doc. 86-3 at 6, 36–38; Doc. 86-5 at 104.  On July 21, 2017, Plaintiff's prescription for

---

[6]     Plaintiff disputes this fact, stating Dr. Winchell prescribed Plaintiff Percocet as part of his post-operative care, and cites to Exhibit 22.  Doc. 95-1 at 13–14.  However, a review of Plaintiff's Exhibit 22 does not support his contention.  Exhibit 22 is Defendant's interrogatory responses, and those interrogatories do not include any discussion of Plaintiff's care following his June 6, 2017 knee surgery. Doc. 95-4 at 23.

Tylenol #3 expired, and Defendant did not renew the prescription.  Doc. 86-2 at 6; Doc. 86-3 at 6; Doc. 86-5 at 113, 118.  Defendant also increased Plaintiff's naproxen dose to 500mg, to be taken twice a day.  Doc. 86-2 at 6; Doc. 86-3 at 5, 39.  From July 22, 2017 until July 26, 2018, when Plaintiff was sent to GSP for an additional surgery, Defendant treated Plaintiff with non-opioid pain medications.  Doc. 86-2 at 6; Doc. 86-3 at 9, 104–27.

While other physicians made recommendations, Defendant Ferrell was responsible for Plaintiff's pain management and his medications.  Defendant Ferrell generally prescribed Plaintiff medication, either directly or by other medical personnel under his supervision. Doc. 86-2 at 6; Doc. 86-3 at 6–7.  Defendant Ferrell made decisions about Plaintiff's care by personally evaluating Plaintiff, reading evaluations of Plaintiff by other medical providers, and discussing Plaintiff's care with those other medical providers.  Doc. 86-2 at 7; Doc. 86-3 at 6–7; Doc. 86-5 at 102–03.  Though Defendant Ferrell considered the recommendations of other medical providers who saw Plaintiff, Defendant exercised his professional judgment when deciding how to manage Plaintiff's knee pain.  Doc. 86-2 at 7; Doc. 86-3 at 7–8.  The exercise of his medical judgment included determining it was appropriate to stop treating Plaintiff with Tylenol #3 after July 21, 2017, and, instead, treat Plaintiff's complaints of knee pain with non-opioid medications.  Doc. 86-2 at 8; Doc. 86-3 at 7–8, 31.

### C.    Confiscation of Plaintiff's Walking Cane and Wheelchair

Plaintiff walked with a cane prior to and following his June 6, 2017 knee surgery. Doc. 86-2 at 8; Doc. 86-3 at 8; Doc. 86-5 at 68–69, 123.  Plaintiff was also issued a wheelchair. Doc. 86-2 at 7; Doc. 86-5 at 70.  On August 7, 2017, Defendant Ferrell believed a walking cane was no longer medically appropriate based on his assessments of Plaintiff and reports of Plaintiff's other medical providers.  Doc. 86-2 at 9; Doc. 86-3 at 9.  Because Defendant believed

a cane was no longer medically appropriate, he confiscated Plaintiff's cane.  Doc. 86-2 at 9; Doc. 86-3 at 8–9, 43; Doc. 86-5 at 123, 125.  A nurse also discontinued Plaintiff's wheelchair profile and confiscated his wheelchair; however, Defendant did not direct any medical personnel to do so.  Doc. 86-2 at 9; Doc. 86-3 at 9.

**D.    Plaintiff's July 31, 2018 Knee Surgery**

On July 31, 2018, Dr. Winchell performed a second surgery on Plaintiff's knee at GSP. Doc. 86-2 at 10; Doc. 86-3 at 9, 81–87; Doc. 86-5 at 185–87.  Following surgery, Dr. Winchell recommended Tylenol #3 to treat Plaintiff's post-operative pain.  Doc. 86-3 at 9–10, 43.  Dr. Winchell recommended two tablets every four hours for the first forty-eight hours following surgery; then two tablets every 6 hours for the next 24 hours; and then twice daily for 8 days. Doc. 86-2 at 10; Doc. 86-3 at 9–10, 81.

**E.    Plaintiff's Post-Operative Pain Management at WSP Following his Second Surgery**

On August 2, 2018, Plaintiff returned to WSP.  Doc. 86-2 at 10; Doc. 86-3 at 10, 88; Doc. 86-5 at 187–92.  Upon his return to WSP, Defendant Ferrell deviated from Dr. Winchell's recommendations due to concerns about addiction, opioid abuse, and Plaintiff's medical needs. Doc. 86-2 at 11; Doc. 86-3 at 10, 88, 135.  With Defendant Ferrell's approval, NP Martyn prescribed Plaintiff two tablets of Tylenol #3 on the afternoon of August 2, 2018, and then twice a day until August 7, 2018.  Doc. 86-2 at 11; Doc. 86-3 at 10, 88, 135.  However, after August 7, 2018, Defendant did not prescribe Tylenol #3 because, in his medical judgment, it was not appropriate.  Doc. 86-2 at 11; Doc. 86-3 at 11.

Along with Tylenol #3, Defendant Ferrell treated Plaintiff's post-operative pain with non-opioid medications, naproxen and Neurontin.  Doc. 86-2 at 11; Doc. 86-3 at 10, 88, 127–36.

Defendant Ferrell treated Plaintiff's complaints of knee pain with non-opioid pain medications from August 8, 2018 onward.  Doc. 86-2 at 36; Doc. 86-3 at 92, 95, 97, 100–02, 127–36.

## DISCUSSION

### I.   Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for

summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.     Plaintiff's Eighth Amendment Claims

Plaintiff alleges Defendant was deliberately indifferent to his serious medical needs by refusing to provide him with certain pain medications, primarily Tylenol #3, following his knee surgeries and confiscating his cane and wheelchair.

### A.     Legal Standard

The United States Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'"  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)).  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the constitutional violation and plaintiff's injury.  Id.  The first element is an objective inquiry. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotation and citation omitted).

The second element is a subjective inquiry.  Id.  To show a defendant's deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a

disregard of that risk; (3) by conduct that is more than mere negligence." Melton, 841 F.3d at 1223.  Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no treatment at all.  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  A mere medical malpractice claim does not amount to a constitutional violation.  Estelle, 429 U.S. at 104.

Medical prison officials are entitled to utilize their medical judgment when treating inmates.  See id. at 107.  Accordingly, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" also does not amount to a constitutional violation.  Melton, 841 F.3d at 1224 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).  Prison officials cannot be held liable under the Eighth Amendment when they provide an inmate with treatment, but the inmate simply prefers a different mode or method of treatment.  Sifford v. Ford, 701 F. App'x 794, 795 (11th Cir. 2017).  Relatedly, a doctor's decision to prescribe a certain type of medication over another is generally a matter of medical judgment that cannot subject the doctor to § 1983 liability.  See Bauer v. Kramer, 424 F. App'x 917, 919 (11th Cir. 2011) (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)).

**B.     Analysis**

Defendant Ferrell contends he is entitled to summary judgment because the undisputed material facts show Plaintiff's claims against him pertaining to pain medication and any confiscation of Plaintiff's cane or wheelchair amount to nothing more a difference in medical opinion.  Doc. 86-1 at 11.  Rather than deliberate indifference to Plaintiff's knee pain, Defendant

argues the record shows he made a medical decision to treat Plaintiff with non-opioid, as opposed to opioid, medication. Id. at 12–13.

Plaintiff, in opposition to Defendant's Motion for Summary Judgment, submitted a 158-page brief.[7] Plaintiff's primary contention is Defendant Ferrell did not have the authority to deviate from Dr. Winchell's post-operative treatment plan, including how to manage Plaintiff's pain following his surgeries. See e.g., Doc. 95-1 at 5–10, 34–35, 63–65; Doc. 95-4 at 7. Specifically, Plaintiff devotes considerable briefing to Defendant's refusal to provide him with Tylenol #3, as Dr. Winchell prescribed. See Doc. 95-2 at 36–42, 43–60, 90–106, 133–38, 144–49. Additionally, Plaintiff complains Defendant Ferrell was deliberately indifferent to his serious medical needs by confiscating his cane and wheelchair and by delaying ordering an MRI. Doc. 95-2 at 5–8, 17–28, 60–68, 74–80, 81–89, 107–27.

Plaintiff points to various GDC policies and medical records to support his position regarding Defendant Ferrell's decision to stop providing Plaintiff with Tylenol #3. See e.g., Doc. 95-2 at 26–42, 90–106; Doc. 95-4 at 7, 107–08. However, none of the medical records or policies Plaintiff cites indicate Defendant Ferrell was stripped of his ability to prescribe treatment to Plaintiff or deviate from Dr. Winchell's recommendations. See Doc. 106-1. Further, it is immaterial whether GDC policy prohibited Defendant Ferrell from continuing to treat Plaintiff's left knee pain as he saw fit because of Defendant Ferrell's referral of Plaintiff to Dr. Winchell. Stated differently, "[F]ailure to follow procedures does not, by itself, rise to the

---

[7]     Plaintiff's brief in opposition is labeled "Plaintiff's Opposition Affidavit and Objections and Responses to Defendant's Motion for Summary Judgment."  Doc. 95-2.  It is divided by "Claim [Number] Assertion of Fact," numbering 1 through 20.  Further, it contains a "Prayer for Relief" and a certification by Plaintiff under penalty of perjury.  Doc. 95-2 at 152–58.  Regardless of the label Plaintiff gives his Response and its subparts, it is largely briefing in response to Defendant's Motion and will be treated accordingly.  Notably, Plaintiff's brief is far in excess of the number of pages permitted by this Court's Local Rules, and Plaintiff did not seek or obtain permission to exceed that page limit.  Local R. 7.1(a).

level of deliberate indifference because doing so is at most a form of negligence."  Taylor v.

Adams, 221 F.3d 1254, 1259 (11th Cir. 2000), see also Nam Dang by and through Vina Dang v.

Sheriff, Seminole Cnty., 871 F.3d 1272, 1282 (11th Cir. 2017) ("A violation of Jail policy does

not in itself rise to the level of deliberate indifference.").

Similarly, Plaintiff contends Defendant Ferrell did not know how to treat his left knee

pain and he was no longer under Defendant Ferrell's care, pointing to Defendant Ferrell's

interrogatory responses for support.  Doc. 95-4 at 23.  In the interrogatory cited, Plaintiff asked

Defendant if he chose Plaintiff's orthopedist.  Defendant Ferrell responded to that interrogatory

by stating he did not choose or have control over which orthopedist Plaintiff was sent to, treated

by, or evaluated by.  Id.  Nothing in that interrogatory response supports Plaintiff's position

Defendant Ferrell did not know how to, and was prohibited from, making care decisions about

Plaintiff's knee pain.

Instead, the record shows Defendant Ferrell continuously treated Plaintiff's reports of

knee pain, including by prescribing Plaintiff non-opioid medication such as naproxen and

Neurontin, as well as approving Dr. Martin's recommendations to treat Plaintiff with Voltaren

cream and a TENS unit.  Doc. 86-3 at 5–6, 26, 39, 92, 95, 97, 100–02, 127–36; Doc. 86-5 at 81,

104, 128.  Though Defendant Ferrell deviated from Dr. Winchell's medication recommendation,

this does not amount to a violation of Plaintiff's constitutional rights.  Bismark v. Fisher, 213

F. App'x 892, 897 (11th Cir. 2007) (finding a doctor's failure to adopt plan of care prescribed by

outside physician after exercising independent professional judgment did not support deliberate

indifference).  Further, Defendant chose to stop prescribing Plaintiff Tylenol #3 based on his

own medical judgment.  Doc. 86-3 at 10; see also Doc. 95-4 at 82 (acknowledging Dr.

Winchell's recommendation for Tylenol #3 but declining to prescribe it because Defendant did

not "think it [was] a good idea").  While Plaintiff contends Defendant could not exercise his medical judgment in this manner, there is no support for this proposition in the record or in law. See Bauer, 424 F. App'x at 919; Adams, 61 F.3d at 1546 (holding a doctor's failure to administer a stronger course of treatment considered a matter of medical judgment not deliberate indifference).

Likewise, Plaintiff contends Defendant Ferrell was deliberately indifferent to his chronic left knee pain because he did not allow Plaintiff to use a cane or wheelchair.  Doc. 95-2 at 5–8, 17–28.  Indeed, Defendant admits he did not allow Plaintiff to use a cane after August 8, 2017, and Defendant denied Plaintiff's wheelchair profile on August 9, 2017.  Doc. 86-3 at 7–8.  But Defendant also provided evidence his decision to prohibit Plaintiff from using a wheelchair or cane was a medical decision.  Id.

Plaintiff attempts to point to evidence showing Defendant's decision to deny Plaintiff a wheelchair constituted deliberate indifference.  Doc. 95-2 at 16–17 (citing Doc. 95-4 at 13–14, 17); see also Doc. 85-2 at 74–80.  While the evidence Plaintiff points to does show Defendant Ferrell denied Plaintiff a wheelchair (which is undisputed), it also establishes he did so in pursuit of alternative treatment.  Doc. 95-4 at 13, 17.  The medical record Plaintiff points to shows Defendant Ferrell provided Plaintiff with other therapeutic measures, including education on the importance of activity and the rest, ice, compression, and elevation method of treatment.  Id. at 13–14, 17.  Plaintiff contends Defendant Ferrell's decision to confiscate Plaintiff's cane amounts to deliberate indifference.  Doc. 95-2 at 60–68 (citing Doc. 95-4).  Again, the evidence Plaintiff points to does not support his contentions.  Plaintiff cites to several documents establishing his cane was indeed confiscated.  Doc. 95-4 at 51–53.  However, those documents also state Plaintiff was receiving other medical treatment, primarily in the form of medicine.  Doc. 95-4 at 53

(listing medication for Defendant including naproxen, Neurontin, and Voltaren).  Additionally,
Defendant's interrogatory response, which Plaintiff cited to and submitted in support of his cane-
related contention, confirms Defendant Ferrell believed it was medically appropriate to
confiscate his cane.  Doc. 95-4 at 55.

Finally, Plaintiff argues Defendant Ferrell's delay in ordering him an MRI constitutes
deliberate indifference to his serious medical need and, thus, summary judgment is inappropriate.
Doc. 95-2 at 81–89, 107–27.  Plaintiff asserts Defendant Ferrell should have ordered an MRI in
August 2017, when he first began experiencing knee pain and soreness.  Id. at 82 (citing Doc.
95-2 at 46–47).  Specifically, Plaintiff points to Defendant's refusal to order him an MRI on
August 17, 2017.  Id. at 84 (citing Doc. 95-4 at 71).

However, the documents Plaintiff cites do not establish Defendant Ferrell was
deliberately indifferent to Plaintiff's complaints about his knee, but rather show Defendant
pursued a different course of treatment.  For example, treatment notes from June 27, 2017 and
August 1, 2017, show Defendant prescribed Plaintiff naproxen as a therapeutic measure.
Doc. 95-4 at 46–47.  Similarly, at the August 17, 2017 appointment, Defendant Ferrell's
treatment notes reflect he examined Plaintiff, provided patient education, and scheduled a
follow-up appointment but did not order diagnostics such as an MRI.  Further, Defendant Ferrell
did order Plaintiff an MRI following an April 5, 2018 appointment.  Doc. 95-4 at 72.  Though
Plaintiff argues this shows Defendant Ferrell was deliberately indifferent and "failed to respond
reasonably" to Plaintiff's medical needs because he did not order an MRI sooner, whether an
MRI is appropriate is "classic example of a matter for medical judgment." McClure v. Hyers,
No. 5:18-CV-32, 2021 WL 1116329, at *7 (S.D. Ga. Feb. 26, 2021), *report and recommendation*

*adopted*, 2021 WL 1110295 (S.D. Ga. Mar. 23, 2021).  Moreover, Plaintiff received treatment such as patient education and medication during visits with Defendant Ferrell.

Plaintiff received medical care for his injury on numerous occasion, including countless appointments with Defendant Ferrell, several different medications, including prescriptions from Defendant for naproxen, Neurontin, and Voltaren, two surgeries, and physical therapy. Plaintiff's claim is simply not cognizable under the Eighth Amendment Cruel and Unusual Punishment Clause.  Woody v. Cronic, 401 F. App'x 509, 512 (11th Cir. 2010) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").  Defendant Ferrell provided Plaintiff with non-opioid pain management medication and other forms of treatment.  Plaintiff's contentions about the type of pain medication, whether he should have been provided a cane or wheelchair, and when to perform an MRI are merely disagreements with the course of treatment Defendant Ferrell prescribed, which does not violate the Eighth Amendment.  Sifford, 701 F. App'x at 795; Loadholt v. Moore, 844 F. Supp. 2d 1274, 1281 (S.D. Ga. 2012) ("[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action.") (citations omitted); Melton, 841 F.3d at 1224; McClure, 2021 WL 1116329, at *7 (granting summary judgment for the defendant because the ordering of diagnostic tests, such as x-rays and MRIs, is a matter for medical judgment).

The fact Plaintiff does not dispute he received other treatment and medication reveals he is simply dissatisfied with the type of treatment offered.  Put simply, Plaintiff did not want his medical needs treated through education and with naproxen, Voltaren, and Neurotin, but instead wanted to be treated with Tylenol #3, crutches, and a wheelchair.  Such a dispute over a plaintiff's course of treatment does not give rise to a constitutional claim.  See Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989) (noting "a simple difference in medical opinion" does not constitute deliberate indifference); see also Bismark 213 F. App'x at 897 (finding a doctor's failure to adopt plan of care prescribed by outside physician after exercising independent professional judgment did not support deliberate indifference); Adams, 61 F.3d at 1546 (holding a doctor's failure to administer a stronger course of treatment considered a matter of medical judgment not deliberate indifference).  Moreover, in his briefing, Plaintiff repeatedly refers to Defendant Ferrell's failure to "reasonably respond" to his knee pain.  However, the Eighth Amendment does not provide a cause of action merely because a doctor fails to "reasonably respond," but instead requires more than negligence.  And the record is clear Defendant did, in fact, reasonably respond to Plaintiff's injury and did so frequently.  According, Plaintiff has not asserted a cognizable Eighth Amendment claim and has not shown any genuine dispute of material fact for trial.  See Estelle, 429 U.S. at 104; Shaw v. Allen, 701 F. App'x 891, 893 (11th Cir. 2017) (holding "mere medical malpractice or a difference in medical opinion does not constitute deliberate indifference").

Accordingly, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment.  Because I have recommended the Court grant Defendant Ferrell's Motion for Summary Judgment, I decline to address his arguments for qualified immunity.  Similarly, my recommendation moots any arguments about Plaintiff's requests for injunctive or declaratory relief.

## III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P.

24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendant's Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Because Plaintiff has not presented a genuine issue of material fact, I **RECOMMEND** the Court **GRANT** Defendant Ferrell's Motion for Summary Judgment, **DIRECT** the Clerk of Court to enter the appropriate judgment and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis status* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of September, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA